IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02327-MEH

DENNIS JOHN HINSON,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**

Plaintiff Dennis John Hinson appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits ("DIB") filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(c)(3). Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court **reverses and remands** the Commissioner's final order.

### I. BACKGROUND

Plaintiff seeks judicial review of the Commissioner's decision denying his application for SSI [AR 246-51] and DIB benefits [AR 252-53], both filed January 26, 2011, claiming that he

was disabled starting June 19, 2008, by limitations caused by pancreatitis and mental impairments. The agency denied Plaintiff's applications on June 1, 2011. [AR 118-24.] Plaintiff requested and received two hearings before an Administrative Law Judge [ALJ], held on September 25, 2012, and January 9, 2013. [AR 125, 142] The ALJ issued a written ruling on January 14, 2013, finding that Plaintiff was not disabled as of January 18, 2011,[1] because considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. [AR 16-28] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-4]   *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed his Complaint with this Court seeking review of the Commissioner's final decision. *See* docket #1.

## II. SUMMARY OF MEDICAL EVIDENCE AND TESTIMONY

Plaintiff was born on April 29, 1961, and was 49 years old when he filed his application for SSI and DIB benefits on January 26, 2011, claiming his disability began on June 19, 2008. [AR 252] Plaintiff reported that he was limited in his ability to work due to a combination of medical problems, including acute chronic pancreatitis, depression, bipolar disorder, anxiety, and fatigue. [AR 284, 298] Plaintiff had worked as a plumber and a plumbing salesman. [AR 51, 285]

Plaintiff's treatment history includes receiving mental health treatment through Metro Community Provider Network. [AR 548-52] There, he was diagnosed with mood disorder and

---

[1] The ALJ's opinion uses January 18, 2011, as the date of the applications, yet the record reflects Plaintiff filed both applications on January 26, 2011. This difference is not material to the Court's analysis.

alcohol dependence and assigned a GAF rating of 28 at two visits and at another received a GAF of 31.[2] [AR 49-50, 416-17, 432]  The medical record also shows treatment for liver disease,

---

[2] In Keyes-Zachary v. Astrue, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012), the Tenth Circuit describes the GAF as follows:
The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000) ("DSM-IV-TR"). GAF scores are situated along the following "hypothetical continuum of mental health [and] illness":
• 91–100: "Superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities. No symptoms."
• 81–90: "Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."
• 71–80: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."
• 61–70: "Some mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."
• 51–60: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."
• 41–50: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."
• 31–40: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child beats up younger children, is defiant at home, and is failing at school)."
• 21–30: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."
• 11–20: "Some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute)."

ascites (fluid in the peritoneal cavity), airway problems, abdominal pain from pancreatitis, bipolar disease, depression, anxiety, high blood pressure, gout, fatigue, nausea, skin problems, and lower back and hip pain. [AR 7, 364-74, 402-03, 413-16, 436-38, 457-58, 514, 526-30, 542-46, 548-52] Medical evidence in the record indicates that back pain began as early as 2003, with Plaintiff's degenerative joint disease ("DJD") noted on a lumbar x-ray. [AR 337]

At the Commissioner's request, Plaintiff underwent two consultative evaluations, a psychological review conducted by William Graham, M.D., on March 28, 2011 [AR 375-80], and a physical examination conducted by Thurman Hodge, D.O., on May 3, 2011 [AR 393-98]. Dr. Hodge found Plaintiff to have physical limitations involving hypertension, possibly fatty liver, pancreatitis, and fatigue, but that in an eight-hour day, Plaintiff could sit for eight hours, stand or walk for six hours, bend, squat, lift or carry 40 pounds, crawl, converse, travel independently, and do daily activities and repetitive motions. [AR 397] Dr. Graham diagnosed major depressive disorder, generalized anxiety disorder, and alcohol dependence, assigning Plaintiff a GAF of 60. [AR 379]

Meanwhile, Plaintiff's back condition seemed to worsen; from September 2011 to July 2012, Plaintiff complained of back pain to his treating physician, Bipin Kumar, M.D. [AR 483, 489, 495, 501, 510-12, 516] Dr. Kumar in February 2012 ordered x-rays to examine Plaintiff's

---

• 1–10: "Persistent danger of severely hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."
• 0: "Inadequate information."

back pain. [AR 507] The results revealed problems with the spine that led to a diagnosis of lumbar spondylosis and femoroacetabular impingement of the left hip.[3] [AR 457-58]

The ALJ convened a hearing on July 10, 2012, but then postponed it without testimony, noting the need to seek review of Plaintiff's records by a medical expert. [AR 29-33] On September 25, 2012, the hearing occurred with testimony from Plaintiff and several experts. [AR 34-75] Plaintiff testified at the hearing. [AR 51-68] Although his application for benefits listed pancreatitis, depression, anxiety, and bipolar disorder as limiting his ability to work [AR 284], Plaintiff at the hearing testified that he stopped working because of back problems, issues with his legs and hips, and mental limitations [AR 53-55]. Plaintiff also testified that Dr. Kumar had seen him about his back issues. [*Id.*] He described his back issues as "someone coming up from behind you and grabbing your nerve from behind and just pulling it." [AR 59] Plaintiff also testified that the back pain makes bending problematic: "[I]t hurts my – my lower – the back tailbone. I – if I just bend over to wash my hands with soap, just that barely leaning kills me … That's why I [] have to do everything in spurts." [AR 61]

A medical expert testified at the hearing that the extremely low GAF score did not align with the entirety of the record, so he suspected the GAF score to be incorrect. [AR 42] A vocational expert also testified at the hearing, concluding that Plaintiff could perform medium-exertion jobs including cleaner, courtesy clerk, or delivery driver. [AR 70-71] After this hearing, the ALJ took the case under advisement to send late-arriving documents to the medical

---

[3] Plaintiff cites medical journals to explain "spondylosis refers to degenerative osteoarthritis affecting the lumbar discs," and "femoroacetabular impingement is a cause of hip pain arising from abnormal contact between the proximal femur and the acetabulum during terminal hip motion … caused by a structural abnormality at the femoral head/neck junction or the acetabulum." Plaintiff's Opening Brief at 7 n. 3, 4.

expert for review. [AR 73] The medical expert later reviewed the documents, which involved reports of suicidal ideations by Plaintiff, and indicated that the new information did not change the opinion proffered in the previous hearing. [AR 76-90] The ALJ later scheduled a hearing for January 9, 2013, to allow Plaintiff's attorney to cross examine the medical expert; there, the medical expert again noted the additional records did not change his opinion. [*Id.*]

The ALJ issued an unfavorable decision on January 14, 2013 [AR 17-29], and Plaintiff requested review of the decision on March 4, 2013. [AR 10-11] Plaintiff's request for review was denied by the Appeals Council on June 17, 2014 [AR 1-3] and, thereafter, Plaintiff filed the present case.

### III. LAW

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is disabled under Title XVI of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 416.920. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c). If the claimant is unable to show that his

impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(e) & (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since the date he filed his application (Step One). [AR 19] The ALJ further determined that Plaintiff had the following severe impairments: chronic pancreatitis, hepatomegaly with fatty liver, hypertension, gout, obesity, bipolar disorder, depression, generalized anxiety disorder, and alcohol abuse. (Step Two). [*Id.*] However, the ALJ found that Plaintiff did not have a medically determinable severe back impairment documented by evidence, describing his findings as follows:

> The claimant testified to and other evidence also reflects complaints of back, hip and leg pain (Exhibits 9F, pp. 56-57; 10F, pp. 31, 35, 41, 43, 54, 69, 72). However, these complaints have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual

>functioning capacity over time. Indeed, it appears that the claimant has never been diagnosed with anything other than "pain" concerning these complaints. Interestingly, he did not even mention these complaints to the consultative physical examiner (Exhibit 6F). Accordingly, it is found that the claimant does not have any severe medically determinable musculoskeletal impairments to account for his back and lower extremity complaints. This is consistent with the State agency's opinion (Exhibits 2A and 4A).

[AR 19-20] Thus, the ALJ concluded that Plaintiff's impairments were not equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 19-20]

The ALJ then determined that Plaintiff had the RFC to perform a wide range of medium work as he could: "lift and carry up to 40 pounds. He can sit for 8 hours in an 8-hour day, and stand and/or walk for 6 hours total in an 8-hour day. The claimant is able to understand, remember and carry out the type of work which can be learned on the job in no more than 3 months. He is without further work-related restriction." [AR 22] After ruling that Plaintiff could not perform any past relevant work (Step Four), the ALJ went on to determine that considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform work existing in significant numbers in the national economy (Step Five). [AR 26-7] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under a disability as defined by the SSA. [AR 28]

Plaintiff sought review of the ALJ's decision by the Appeals Council; however, the Council determined it had "no reason" under the rules to review the decision and, thus, the ALJ's decision "is the final decision of the Commissioner of Social Security." [AR 1]

## V. STANDARD OF REVIEW

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact ... are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *See Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) (citing *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

On appeal, Plaintiff asserts: (1) the ALJ failed to consider all of his medically determinable impairments, particularly regarding back and lower extremity impairments, at Step Two; thus (2) the ALJ's RFC determination was not supported by substantial evidence.

## VII. ANALYSIS

### A. Consideration of all Medically Determinable Impairments

The ALJ determined that Plaintiff had the following severe impairments: chronic pancreatitis, hepatomegaly with fatty liver, hypertension, gout, obesity, bipolar disorder, depression, generalized anxiety disorder, and alcohol abuse. [AR 19] Yet the ALJ found Plaintiff did not have medically determinable issues with regard to back pain, noting that the evidence indicated only complaints of pain. [AR 19-20] Plaintiff argues the ALJ mischaracterized the evidence by overlooking the details shown in exhibit 9F [AR 457-58], which contains x-rays and diagnoses of spondylosis and femoroacetabular impingement and concluding Plaintiff had "never been diagnosed with anything other than pain concerning these complaints" of back, hip, and leg pain. [Plaintiff's Opening Brief, docket #19 at 7 (citing AR 19-20)] Plaintiff also argues that the ALJ, in concluding the back issues involved pain without further diagnoses, further failed to take into account that Plaintiff's treating physician ordered the x-rays based on complaints of pain [AR 507] and that the record shows extensive complaints regarding pain [AR 483, 489. 495, 501, 506, 510-12]. [Plaintiff's Opening Brief at 7.] Plaintiff concludes that, accordingly, the decision should be reversed for the ALJ's failure to consider the combined effect of all impairments. [*Id.* at 13.]

Defendant counters that the ALJ reasonably found the impairments causing Plaintiff's back, hip, and leg pain were not severe, concluding that "the evidence did not support a conclusion that Plaintiff had an impairment in his back, hips, and legs that significantly affected his ability to perform basic work activities for a 12 month period." [Defendant's Response Brief,

docket #23 at 7-8.] Defendant concedes the record includes x-rays showing Plaintiff had impairments of the hip and lower back yet concludes they were insufficient to show that Plaintiff's impairment was severe. [*Id.*] Defendant also argues that Plaintiff did not in his initial application or request for reconsideration claim he had limitations caused by back and hip pain, not did he always complain of back pain when reporting symptoms to the consultative physician. [*Id.* (citing AR 284, 313, 393).] Defendant further asserts that Plaintiff had back pain for only 10 months, "which was insufficient duration to establish a disabling limitation." [Defendant's Response Brief at 9 (citing AR 489, 495, 501, 507, 512, 530).] Defendant finally argues that "[e]ven if Plaintiff is correct in his nitpicking of the ALJ's decision, [Plaintiff] has not shown that the error has harmed him, as the ALJ considered all of the evidence in assessing the severity of his back, hip, and leg impairments." [Defendant's Response Brief at 9-10 (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion [] at step two and proceeded to the next step of the evaluation sequence.")).]

Plaintiff replies that the record first shows back pain as early as 2003 [AR 347] and Plaintiff's treating physician noted back issues continuing to escalate throughout 2011, leading to an order February 16, 2012 from the treating physician for x-rays, read by a radiologist and returned to the treating physician as showing specific diagnoses shortly after. [Plaintiff's Reply Brief, docket #24 at 4-6 (citing AR 56-57, 31, 35, 41, 43, 54, 69, 72, 483, 489, 495, 501, 506, 510-512).]

First, the Court questions Defendant's conclusion that it matters not whether the ALJ omitted an impairment at Step Two because the "ultimate question" is whether an impairment causes work-related limitations beyond those considered for the RFC assessment. Defendant cites *Carpenter*, 537 F.3d at 1264 in support of this conclusion; however, the question in *Carpenter* did not involve a disregarded impairment but, rather, whether the ALJ properly assessed the identified impairments in combination, as well as singly, to determine whether they were "severe." *Id.* at 1266. Certainly, an error in failing to consider all impairments *in combination* would be harmless if the ALJ found at Step Two that a claimant's benefits could not be denied based upon a consideration of all impairments *singly*. *See id.* Step Two of the evaluation process requires an ALJ to decide whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.920(a)(4)(ii). The regulations require the ALJ to "consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled," 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and the Tenth Circuit requires the ALJ to discuss "the significantly probative evidence he rejects[,]"*Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996).

Here, it is undisputed that the ALJ rejected Plaintiff's back and hip pain in the Step Two assessment for supposed lack of documentary evidence of a diagnosis. An ALJ's rejection of an impairment altogether could be reversible error. "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less. . . . Further, the failure to consider all of the impairments is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006)

(citations omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) ("In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not.") (emphasis in original).

Accordingly, the question is whether the disregarded impairments were "medically determinable." *See Railey v. Apfel*, 134 F.3d 383, 1998 WL 30236, at *3 (10th Cir. 1998) (finding that the ALJ's failure to mention plaintiff's back impairment, wrist impairment or respiratory impairment at step two constituted legal error); *see also Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1194 (D. Kan. 2007) ("Therefore, the first consideration at step two is what, if any, medically determinable impairments plaintiff has regardless of the credibility of her allegations of the severity of those impairments.").

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 416.908. Section 416.908 provides that a claimant's "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." More specifically, "symptoms" are the claimant's description of his/her own physical or mental impairments; "signs" are anatomical, physiological, or psychological abnormalities that can be observed apart from symptom descriptions and must be shown by medically acceptable clinical diagnostic techniques; and "laboratory findings" are anatomical, physiological or psychological phenomena

that can be shown by use of medically acceptable laboratory diagnostic techniques. 20 C.F.R. § 416.928.

Here, the ALJ noted the alleged back, hip, and leg pain but rejected them because "these complaints have not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's residual functioning capacity over time. Indeed, it appears that the claimant has *never been diagnosed with anything other than 'pain' concerning these complaints*." [AR 19 (emphasis added).] This is incorrect as the record demonstrates an initial diagnosis in 2003 of degenerative joint disease [AR 337] and diagnosis through x-rays of two conditions in 2011 that could reasonably create back, hip, and leg pain.[4] [AR 457-58] While Plaintiff did not specifically note back and hip pain as a condition on his application, he testified about it at the hearing with the ALJ [AR 61], and the record is replete with back pain concerns, all of which the ALJ had the opportunity to review. [*See, e.g.*, AR 489, 495, 501, 507, 512, 530).] Plaintiff's medical record from his treating physician further showed soreness in Plaintiff's back and hips with restriction of joint movement consistent with what reasonably could align with Plaintiff's diagnoses of spondylosis and femoroacetabular impingement. [AR 483, 489, 495, 501, 506, 507, 511-12]

---

[4] The ALJ also noted his opinion that Plaintiff "does not have any severe medically determinable musculoskeletal impairments to account for his back and lower extremity complaints" was "consistent with the State agency's opinion. [AR 20] However, the x-rays and diagnoses of back issues came into the record only after those consultative examinations, yet the ALJ did not provide further opportunity for the State examiners to review the additional records to determine whether the new information would alter their opinions.

Accordingly, the Court finds that Plaintiff has met his burden to demonstrate his back and hip pain are medically determinable impairments shown by medically acceptable clinical and laboratory diagnostic techniques and, therefore, should not have been disregarded at Step Two.

Defendant appears to argue that any errors made by the ALJ at Step Two are harmless. However, "to conclude that error in a disability hearing is harmless, it must be clear that, had the ALJ considered the appropriate material – here the medical evidence of [the challenged impairment] – 'no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Brown v. Barnhart*, 182 F. App'x 771, 773 (10th Cir. 2006) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Based on its review of the record, this Court cannot say conclusively that *no* reasonable administrative factfinder would have found Plaintiff's back, hip, and leg pain were severe medical impairments. Accordingly, the ALJ's error in omitting these impairments was not harmless. That is, the ALJ's failure to consider the documentation and evidence of diagnoses of Plaintiff's back, hip, and leg pain impaired his analyses at Steps Three and Four. He did not take these possibly severe impairments into account when determining Plaintiff's residual functional capacity or whether these impairments, alone or in combination with other impairments, were equivalent to any listed impairments so severe as to preclude substantial gainful employment. *See Brown*, 182 F. App'x at 774.

For his Step Four assessment, the ALJ concluded:

> [C]laimant has the residual functional capacity to life and carry up to 40 pounds. He can sit for 8 hours in an 8-hour day, and stand and/or walk for 6 hours total in an 8-hour day. The claimant is able to understand, remember and carry out the type of work which can be learned on the job in no more than 3 months. He is without further work-related restriction.

[AR 22]  In coming to this conclusion, the ALJ ignored the record evidence and did not mention Plaintiff's back, hip, and leg pain as anything more than a self-described symptom.  Had the ALJ considered the back, hip, and leg diagnosed conditions properly as medically determinable impairments, it is possible he would have come to a different conclusion. Therefore, upon remand, Plaintiff's credibility must be reassessed in light of all the evidence in the record possibly supporting the existence of back, hip, and leg pain as disabling impairments.

**B.      Remaining Issues**

The Court "address[es] only so much of Plaintiff's arguments as are sufficient to require reversal."  *See Cross v. Colvin*, -- F. Supp. 2d --, 2014 WL 969688, at *2 n.1 (D. Colo. 2014). The Court expresses no opinion as to the Plaintiff's remaining arguments and neither party should take the Court's silence as implied approval or disapproval of the arguments.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").  The Court also does not suggest a result that should be reached on remand; rather, the Court encourages the parties and the ALJ on remand to consider fully and anew the evidence and all issues raised.  *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.") (citation and quotation marks omitted).

## **CONCLUSION**

In sum, the Court concludes that the ALJ in this case improperly ignored record evidence documenting diagnoses and treating physician evidence regarding Plaintiff's back, hip, and leg pain as medically determinable impairments at Step Two and failed to consider them in the remainder of the sequential evaluation. Accordingly, the Court finds the final decision is not supported by substantial evidence in the record as a whole as it appears the correct legal standards were not applied. Therefore, the decision of the ALJ that Plaintiff Dennis John Hinson was not disabled is **reversed and remanded** for further review and explanation.

Dated at Denver, Colorado this 4th day of August, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge